v. Anti Appeal No. 24-2064. Mr. Geisfeld, whenever you're ready. Excuse me. May it please the court. My name is Matthew Geisfeld, and I represent the appellant Paul Williams Anti. At sentencing, the government and Anti agreed that he did not necessarily know the particular details of the fraud scheme, and the district court thought otherwise. And it also decided it knew what knowledge it believed Anti possessed and was withholding. Mr. Geisfeld, did the defendant disclose to the government in the course of this case who had contacted him originally and brought him into this scheme, when, how, where, how he wound up setting up all these fake bank accounts? He disclosed his role in setting up the bank accounts. Did he answer those questions? No, he did not. Would those things seem to a reasonable district judge to be within his knowledge? If the district judge is also assuming that Anti possessed that knowledge, which is exactly what... Is it unreasonable to assume that the defendant would know who contacted him, when, how, and how he got those accounts set up? It's, I think, unreasonable given the facts before the court. It's unreasonable given that the government presented no information to suggest that Anti knew these rules. The government in its factual... What I'm asking about are things that are about his personal knowledge. And, just to clarify your question, asking if it would be reasonable for the court to assume that he, or infer that he knew those things? That he knew how he had been contacted, when, by whom, or if it was by some anonymous source, why on earth he agreed to participate in this multi-million dollar fraud scheme. Things that would clearly be within his own knowledge about his own role, even if he didn't claim knowledge of the larger scheme. I think he admitted that there was some connection. Anti admitted that there was some connection. He admitted that the people that he was connected with were performing illegal activity, and he admitted that he knew that the illegal activity, or that the funds being deposited into his account... He admitted the bare bones of the elements, right? Yes, absolutely. And that's it? Yes. So, I guess my problem is, and you agree there was no minor role adjustment. That was proper? Correct. Okay. So, the government made this point in their brief, and I'd like to understand your perspective on this. But, the argument in mitigation seems to have been some kind of variation on a minor role in the larger scheme, without challenging the guideline calculation, but not supported by any evidence. Your Honor, the argument was that the sentencing guidelines contemplate all roles within money laundering. And what the defense presented at sentencing was that we have evidence that Anti's role was compartmentalized. What was that evidence? The evidence stipulated to. The evidence that the government admitted and agreed that he didn't know how the fraud was being perpetrated. And I think the how the fraud is being perpetrated is the best comparator or distinguishing factor, Your Honor. Having contact with a person, and as Anti admitted, allowing that person to deposit what Anti knew was illegal funds is absolutely one thing. To know then how that person is perpetuating the fraud, how they got the money, that is a completely separate thing. And that is what the court, the district court, specifically said it believed Anti knew. The court said that Anti should have disclosed who he's working with, how this is arranged, and where the money ends up. Those additional factors, some connection. Why wouldn't those things be within his knowledge, at least where he's sending the money? The money was withdrawn from his account. He doesn't know where it's going. Who's the owner of the account? How does he not know where it's going? I mean, this seems to me to be totally incredulous. Your argument here, how would you not know where money is going when it's leaving your account? He agreed and stipulated too that unknown fraud perpetrators, he gave access to his accounts. Absolutely, Your Honor. And then he lost all access altogether? Yes. He couldn't access his own accounts? No, he accessed his accounts. Once the money left the accounts, he no longer had access or knew where that money was. And his claim is he did not know who had that access? Correct. He knew he had contact with an unknown person. He knew that that was anonymous. And I think that... And why did he agree to do this with people he didn't know? That would only speak to his state of mind. And he admitted his role in this offense and admitted culpability. Your Honor, the distinction here, I think, is that it's not necessarily a dichotomy. It's not that you know nothing or you know everything. And what the district court said is that there's no possibility that Antti could... Those are the only two options. That Antti either knows nothing as sort of what he presented, although he admitted some connection to the unknown fraud perpetrators, and that he must also know everything. That is clearly an exaggeration of the district court's thinking. Well, I say that based upon the district court's quotes. And if I am mischaracterizing those quotes, I apologize. But the district court indicated that Antti possessed knowledge and failed to disclose who he's working with, how the fraud is arranged, and where the money ends up. Exactly. Yes. And so that, I guess, is my point with the dichotomy, is that it is... That's not all versus nothing. That's why I started by asking you about what was reasonable for the district judge to expect the defendant to know. But would it only be... Antti's not obligated to tell the government or the district court any of that. Absolutely. Is it just that if Antti wants to make an argument that my role is so discreet, please take that into account, then the judge would reasonably expect Antti to explain? The purpose for which the court used this extra record information doesn't matter to the procedural error. What extra record information? The two categories of extra record information are that Antti both possessed knowledge about, as I've quoted to your honor, how access was gained to the victim's accounts and business systems to create the money that was deposited into the accounts that Antti managed. Yeah, he might not know that. Right. And then the court, in justifying that expansion of Antti's role from what the evidence actually showed, the court offered this extra record information about Ghana. No, he didn't. That's so unfair to the district judge. Your client raised it as an excuse for his conduct. And the district judge said, wait a minute, what does this have to do with Ghana? And you raised it... I'm upset. Look, the defense counsel raised this in his sentencing memorandum. Said, oh, he's an immigrant. He doesn't know anything about the criminal justice system. And then your client says, oh, by the way, I'm from Ghana. And the district judge says, what does that have to do with anything? And then, by the way, there's no objection from defense counsel whatsoever. This is all during the elocution. The elocution ends, no objection whatsoever. None. With regard to the objection point, your honor, this court has held that... No, we have not. We've held during the elocution, after the elocution, defense counsel has got to object. That's different than the judge stating his reasons for the sentence. Okay. So you've got one, which is a misstatement, something along the lines of Ghana is the largest economy in Africa. He may have meant one of the largest economies in Africa. Who knows? But your client raised the Ghana issue as an excuse for his conduct. And what you're telling us is the district judge should have just sat there and ignored it. That is not what I'm telling you, your honor. Then what are you telling us? However, whatever reason Mr. Andy raised it, which he did bring it up, and the defense... I know why he raised it. Hold on. These statements of yours, he raised it. He said, the judge, how is it possible? How could you not foresee the risk of your conduct? That's why I said with my African background or Ghana background, he told the judge why he raised it. You're right. So we know... Did Mr. Andy finish his sentence there? No, your honor. And I appreciate that. I want to respond to Judge Kirsch. What Mr. Andy says is yes. I think it's a fair recollection or fair description of the record to say he was talking about his African descent, his native country, with regard to why he might have not understood what his limited role was. The difference though, and what we've argued, is that rejecting that idea about the connection is not the same thing as then saying, I don't believe that you don't know about the fraud. The court used the Ghana references to say that this type of fraud and money laundering is common in Ghana, and therefore, Mr. Andy, you must know it as well. And that, we argue, was a step too far. I see my time has expired if there's any other questions. Okay. No, thank you, Mr. Geisel. Ms. Oswald. Good morning. May it please the court, counsel. The district court did not commit procedural error in this case. It did not make erroneous findings of fact. It did not rely on erroneous information. It did exactly the opposite of that. It rejected defendants' arguments for mitigation that were clearly unsupported by the record. It drew reasonable inferences based on the record and sentenced Mr. Andy based on the things that were known, not the things that were not. And as a result, this court should affirm. I want to talk briefly about the undisputed facts because that is what framed the court's comments during sentencing. It was undisputed that Mr. Andy was engaged in and operated a complex money laundering scheme. He used multiple fake identities, fake companies, and fake documents. He opened and controlled multiple bank accounts, at least 14 in different banks. I want to take issue with some of the representations that were made during opposing counsel's arguments. I think the court needs to look carefully at the PSR to know what the facts of this case are. I don't think that there's any evidence that people, somebody, some unknown fraudster was pulling money out of those accounts. What the money laundering scheme was, was money was coming into Mr. Andy's accounts and he was directing it to other accounts that were controlled by him. There was no one else that the government found that was controlling those accounts or withdrawing money from those accounts. He facilitated millions of dollars in fraud proceeds being moved through and to places unknown. And again, he was funneling it between accounts himself. He used an Alzheimer patient as a front to conceal his activities and he engaged in this behavior for several years. So in other words, he was a sophisticated money launderer. He was not a novice. He was not some low-level player. And then he got up at sentencing and said, Judge, I don't know anything because I'm from Ghana. Correct. And again, I think the court recognizes context matters. What all of this came about because in his sentencing memorandum, he tried to argue that he was some small-bit player who retained very little of the fraud proceeds. And he made those arguments based on other cases, not this one, in which money launderers kept, I think he said, the quote was some small percentage, 4%, 2% of the proceeds. And from that, he tried to extrapolate that he had only retained $77,000 out of $3.4 million that was going through his accounts. And the court engaged in that conversation with him a little bit, but ultimately said, wait a minute, you're asking us to speculate. None of that is before the court. And so I'm not willing to go there. And that was proper for the court to do that. Can you respond to Mr. Giesfeld's point? Mr. Ante does raise his African background. He starts to make some point. By my reading of the transcript, he is talking about not understanding the consequences of his actions, but he doesn't finish his point. The court interrupts him. Now, later on, and the court does say, as Judge Kirsch has said, a flavor of, what does your being from Ghana have anything to do with it? Later, however, the court says, Ghana is such a large area. Why are we not to read that as the court connecting Mr. Ante's being from Ghana with an inference that he must know something about fraud, a lot about fraud, something about this fraud, more about this fraud than he lets on? Can you help me there? Yes, Your Honor. Again, context matters. So as the court has already recognized, this whole issue about him being from Ghana was raised by the defendant himself, where he said, I didn't know anything about anything. I was duped. I was misled. I had no awareness of these unknown people out there. I couldn't foresee the risks, dangers, and possible consequences of my conduct because of my African background. He used that term multiple times. And the court did let him explain, like, it was my African background, Your Honor, that I just didn't know anything about anything. And the court was understandably incredulous at that and said, wait a minute. What does Ghana have to do with anything? And I think the court was not saying, because you're from Ghana, which is this hotbed of fraud, you must know more about the underlying fraud and must have been involved in it. What do you, how do you account for the court's statement? This is where my, I perhaps was too long of a wind up for you. My question is, what do we make of the court's comment that a lot of fraud happens in Ghana, that specific comment? Right. And I think that is in the context of what the defendant was trying to argue in the court, saying, wait a minute, Ghana is not some unsophisticated country where none of this stuff ever happened. It would be like saying, I don't, I didn't know the consequences of my actions because I'm from Chicago. Well, no, it'd be like the judge saying there's a lot of drug dealing in Mexico. Correct. There is. Right. Right. I mean, would we extrapolate from that that the judge sentenced a Hispanic defendant more or to a larger sentence because there's a lot of drug trafficking in Mexico? No, and I don't think there's any, there's nothing in the record to suggest that the court relied on that information to say that somehow Mr. Ante played a bigger role or somehow knew the underlying pieces of the fraud. The court was very clear that it was sentencing him on the facts that were known. And the court even said that. The court specifically said whether or not he was involved in that underlying fraud is unknown. What is known is that he operated a very sophisticated money laundering operation, moved millions of dollars through those accounts, and all of that money is now untraceable. And so the court properly focused on what it did know and refused to be persuaded by what it did not know and what Mr. Ante did not disclose. Unless the court has further questions, the government rests on its brief and asks the court to adjourn. Okay. Can I ask you to comment? It was not cited in the briefs, which you may be an escape hatch here. In a case called Trujillo Castillon, a district judge had made some comments during the sentencing hearing that tended to focus on the defendant's ethnicity and national origin. And a panel of our court sent it back for resentencing, in essence saying if there's reason to doubt about this sort of a sensitive issue, we ought to just send it back. If you're not familiar with the case, maybe there's not that much light to shed on it. I'm not familiar with the case, Your Honor. It's 692 F3rd 575 and 578, just for everybody's reference. I would be happy to submit some supplemental briefing on that, but what I would say to the court is I don't think remand is required in this case. The court clearly was not focusing on that Ghanaian background as a way of justifying its sentence. It was merely expressing skepticism about Mr. Ante's perceived or articulated ignorance of what this fraud was about or what, you know, his unsophistication, which was just completely belied by the record in this case. He was a very sophisticated money launderer. Thank you. Okay. Thank you, Ms. Oswald. Mr. Giesfeld, your time has expired, but would you like a minute for rebuttal? Yes, thank you, Your Honor. I appreciate it. I'd first just like to add I appreciate the government's correction. My indication that that Ante did not control the funds was based upon the PSR, that he didn't retain it. I think counsel's representation about the actual accounts is more accurate. I apologize for that. Judge Kirsch, you brought up the idea of the Mexican cartel. Simply draw the court's attention to a case, U.S. v. Smith, from this court, 400 Federal Appendix 96, in which the sentencing court referenced Hitler, Cesar Chavez, and the Mexican drug cartel and somehow used that information and applied it to the particular defendant. That case might be illustrative here in the instance in which the court. I do agree, Judge Jackson, that the district court seemed, based upon his line, that this type of fraud exists in Ghana, and therefore, Mr. Ante, I find it hard to believe what you're telling me. He used, I think, the plain reading of the transcript indicates that he used that information to refute Ante. And with that, I yield my time. Thank you, Your Honor. Thank you, Mr. Giesfeld.